Next case is Romano v. Laskowski Good morning, your honors, and may it please the court. My name is Alex Pilla on behalf of the Seton Hall Law Center for Social Justice. I, along with my co-counsel, represent the appellant, Mr. Anthony Romano. In a moment, my co-counsel will address the district court's improper dismissal under Rule 41. I will begin with the district court's failure to fulfill its duty of inquiry under Rule 17c. The district court abused its discretion by failing to fulfill its duty of inquiry under Rule 17c because the record contained verifiable evidence of an objective prior determination by a mental health professional indicating Mr. Romano's possible incompetence and made a Rule 17c determination without inquiring further as required. So that, I mean, the district court inquired, so Esponte considered the appointment of guardian ad litem. Your argument is that the district court was required to do what exactly in further inquiry? Your honor, the district court was required to look further into the verifiable evidence that was presented in the record, and it did not. It made a Rule 17c determination. So it would go to hearing, gather evidence, get an expert. What is required? Such an attempt to verify the evidence need not be burdensome on the district court. It could merely ask the parties to submit further information regarding Mr. Romano's mental health and how that plays into his incompetence. So maybe the question is, how do we draw the distinction between an inquiry and then determining that there's not a there there, and what inquiry you think didn't happen? Yes, your honors. The inquiry didn't happen because the district court itself acknowledged that it did not have sufficient evidence to determine the role that Mr. Romano's mental health played in his actions in litigating his case. And the defendants acknowledged in their reply brief the applicability of the duty of inquiry under Rule 17 as explained by the Third Circuit in Powell. Powell made clear that in applying the Second Circuit's decision in Forelli, there is a threshold step that is a duty of inquiry by the district court to determine whether or not a Rule 17c decision is even necessary. The duty of inquiry can have two purposes. It can clarify whether there's a need for a Rule 17c determination, and it serves to develop and inform the record for an adequate Rule 17c determination. Maybe I'll take a step back. What is the definition of incompetence that you think should be applicable there, especially in a state like New York where there are a few to choose from? Your honor, for a litigant who is pro se and incarcerated and also suffers from mental health challenges, the legal competence that would be required to manage his own legal affairs sufficiently and protect his own interests, Mr. Romano was aware that he had mental illness that would have, that made it difficult for him to protect himself. He repeatedly put it in front of the record that he needed help. So you think a standard that, so I saw a few definitions. One of them is like a lack of understanding of the proceedings. Another one was a lack of a capability to pursue their interests. It's clear to me that one is more favorable to your client in this instance, but as a principle of having to decide among the various options, which ones should we pick and why? The latter, your honor. But why? I mean, the word, it's not the words, it's like what is the principle for why those words matter? It matters because a litigant who cannot adequately protect their own interests is owed protection by the court by Rule 17C. And it's not a matter of whether or not he can file a complaint himself. It's a matter of whether or not that complaint is going to adequately protect his rights in this case within the Attica prison. Well, what is the trigger? I mean, is any mental illness, evidence in the record of your client didn't say, I'm not competent to proceed in these proceedings. He said, I would like the assistance of counsel in my deposition. I suffer from mental illness. Yes, your honor. That is what he said, and I think that goes to your honor's question about what the standard of incompetence should be. It's not a matter of simply understanding that he's in litigation and what the issues are, but because he didn't specifically use the word incompetence, that he would be denied protection by Rule 17. The evidence in the record, the record contained both objective evidence in the form of prison documentation, it's page 42 and 43 of the appendix, and that included objective determinations by a mental health professional previously that he was classified as 1S, which means that he's a person who's severely mentally ill and suffers from breaks with reality, as well as being placed in the IICP, which is the Intensive Intermediate Care Program for severely mentally ill inmates who are not able to function in the general population, but beyond that, not even in the ICP. So that determination was already in the record, and that is objective evidence. Thank you. Good morning, your honors. May it please the court, my name is Natalie Kenny, also on behalf of Seton Hall Law Center for Social Justice. The district court abused its discretion under Rule 41 and Rule 37 by dismissing Mr. Romano's complaint as a sanction for failure to prosecute his case without satisfying two obligations. First, determining whether Romano's unwillingness to be deposed without counsel was due to willfulness, bad faith, or sufficient fault as to be culpable, and second, without considering less onerous alternatives to dismissal. First, defendants concede that the district court has an obligation to make a mandatory threshold determination of culpability before dismissing a case as a sanction for failure to prosecute, one that the district court here overtly stated it did not and could not make. Defendants argue that this obligation only applies to dismissals with prejudice, but that argument is unavailing for two reasons. First, because the obligation applies to dismissals both with and without prejudice, and second, because the obligation unquestionably applies to dismissals without prejudice that are tantamount to a dismissal with prejudice, which is true in this case. Now, regarding the assessment for willfulness, this threshold requirement applies to dismissals without prejudice, and that's a conclusion that's supported by both the text of Rules 41 and 37 and this court's precedent. The text of Rule 41 and Rule 37 are clear, and they make no distinction at all between dismissals with and without prejudice. The rules simply overtly refer to dismissal, and it would be easy enough for the rules to refer to dismissals with prejudice if that was intended, and this court and other courts of appeals decisions have not suggested otherwise. In fact, as we've detailed in the brief, this court has never made such a distinction between dismissals with and without prejudice. Well, is it your strongest argument that here the dismissal was in effect with prejudice? Yes, Your Honor. It was in effect a dismissal with prejudice because Romano is in forma pauperis. He has three strikes under the Prison Litigation Reform Act, and he was only able to file his suit in this case because this court on appeal found that he was in danger of imminent physical injury, and he's since been transferred to another facility, so there's no reason to think that he's still facing that imminent danger and would be able to. Well, isn't it also true that in this case the statute of limitations would pose significant problems for him? Yes, Your Honor. At least as serious as in Winder because it's now 2024, and the events he was suing about were before 2018, so both because of his three strikes under the PLRA and because of the statute of limitations issue, the practical effect of dismissal without prejudice in this case is tantamount to a dismissal with prejudice. So unquestionably, the threshold requirement for willfulness applies here, which the district court did not make. Finally, as we argued in the brief, the district court also erred when it failed to consider the efficacy of lesser sanctions or less onerous alternatives to sanctions like case management actions. It simply dismissed his case instead of making this determination. What do you have in mind for case management? The district court could have asked the parties to submit evidence of whether Romano's mental illness drove his decision not to complete the deposition, could have also appointed counsel for the limited purpose of the deposition or for the limited purpose of raising the implications of his mental illness under Rule 17 or Rules 41 and 37. So how do we draft something that doesn't invite folks to refuse to sit for depositions and then claim that they're not comfortable? What is the way that we prevent abuse? Your Honor, the standard really is about being able to deter culpable conduct. And in this case specifically, he wasn't culpable in his conduct and his conduct wasn't capable of deterrence. But there are cases in which deterrence is capable. But here the record is consistent with Romano's not being culpable because he made repeated statements that he felt like he couldn't adequately represent his interests by not having counsel present for his deposition. Do you think that the trigger of the mental incompetence is what prevents abuse? Yes, Your Honor. Good morning, Your Honors. May it please the Court. Joseph Spadola for the State Defendants. I'd like to begin by explaining why this Court's decision in Ferrelli squarely controls the Rule 17 issue in this case. So it's true that the Court did conduct an inquiry under Rule 17, but our first-line position is that because under Ferrelli there was no duty to conduct, even mention, Rule 17 at all, it could not have been an abuse of discretion for the Court to go on and consider the possible application of Rule 17 and decide that there was no need for a further inquiry. And the reason that there's no duty of inquiry under Ferrelli is that there is no verifiable evidence of incompetence in this record. The only evidence in the record is of Mr. Romano's serious mental illness. And as we explained, serious mental illness is not in any way tantamount to incompetence. But doesn't that require us choosing among the various incompetent standards? Right. There's criminal law. There's civil law. There's a law that or civil litigants. There's the law that folks must adhere to and trust in the states. Like, which is the definition that we should be adopting and why? So the New York Court of Appeals in the Rivers v. Katz case provides a useful framework, I think, because the court in that case was addressing whether individuals who are involuntarily committed in a mental health facility are competent to make medical decisions. And the court said that they are not necessarily incompetent. And in reaching that conclusion, the court explained, quote, it is well accepted that mental illness often strikes only limited areas of functioning, leaving other areas unimpaired, and consequently, that many mentally ill persons retain the capacity to function in a competent manner. And that dovetails with a separate principle that the court can find under Article 81 of the New York Mental Hygiene Law, which is sort of the general capacity standard for purposes of appointing a general guardian for managing personal affairs and finances. But what about the definition under 1201 requiring a guardian ad litem in a civil litigation if they're an adult incapable of adequately prosecuting or defending his rights? What's wrong with that definition? I'm sorry, you're referring to which provision, Your Honor? 1201, the civil litigant getting a guardian. Is New York Mental Hygiene Law 1201? Right. So obviously, the most pertinent standard concerns the ability to participate in a lawsuit. The guardian ad litem is a less restrictive form of guardianship than a more general guardian. And that's why we think that a standard like Article, you know, Mental Hygiene Law Article 81, which plaintiffs cite, is too broad. But even under that provision, a court, my understanding is that New York courts can appoint a guardian ad litem where the functional limitation has to do with the ability to participate in a lawsuit. But isn't not being able to sit for a deposition being able to participate? The question is whether he actually was unable to sit for the deposition. And is that not a question that required an inquiry for a court that they're claiming from a court that didn't happen? Not where the record contains no evidence of incompetence. But isn't that circular, though? Like if we, I mean, that's why I'm starting with the definition of like what is the definition of incompetence that we need to start with? And then what is the duty? And then we need to ask what is verifiable and whether or not they actually need a finding of incompetence before. I mean, that's what we're hoping you can unpack for us. Well, I think that's the very question that Farrelly answered. And it set out a bright line rule that does not, it's not, it's not about a substantial question of possible incompetence. It's a very cruel rule that requires either an actual adjudication of incompetence in another proceeding or a mental health professional opining that the person is, not just has a mental illness, but is unable to represent their own interests. That's what triggers the duty of inquiry under Farrelly. Because if you create a rule where a mere diagnosis of mental illness or a litigant mentioning, you know, that will vastly expand the scope of mandatory Rule 17 inquiries. And I'll also emphasize that what we're talking about here is the scope of the mandatory duty. Of course, district courts always retain discretion to decide whether to conduct an inquiry in particular cases. And they're in the best position, district court judges, to assess the litigant's competence and determine whether an inquiry is warranted. I'll also note that Farrelly defines the standard for- So is our evaluation whether it was an abuse of discretion not to conduct an inquiry, or having conducted an inquiry that the district court did, whether the district court abused its discretion in deciding not to appoint a guardian ad litigant? It's the latter, but I would amend the last part of what Your Honor said. So I think the question is whether having considered Rule 17, the district court abuses discretion in not conducting a further inquiry. So the court didn't actually get to the point of deciding whether or not to appoint a guardian. What the court did was basically say no further inquiry is required here. And that question is, again, also answered by Farrelly because if there was no duty to even consider Rule 17, then there was no duty to go even further than the district court did. And that dovetails with the question Your Honor asked earlier about what the district court could have done here. And I think having already considered the record evidence before it and whether that contained evidence of incompetence, to go further, the court would have had to solicit expert evidence about Mr. Romano's mental health. It would have had to get either appoint an independent psychiatric expert or require that DOCS officials or Office of Mental Health officials provide medical records, which can be a complicated thing because Mr. Romano would have to consent to that. And even DOCS, my understanding, does not have access to those mental health records. It's the Office of Mental Health. And maybe there would have to be a hearing. So this is not something that is done lightly. If you're going to go beyond what the district court did here, it's going to be a very invasive inquiry that will require weighing expert testimony. And the rule in Farrelly was very mindful of the possible burden on district courts and on litigants. If a pro se litigant doesn't want to be subjected to this inquiry, they would nonetheless have to undergo this kind of invasive inquiry into their competence. And as one of your honors pointed out, Mr. Romano never indicated that he lacked capacity here. He said that he had a mental illness and he wanted appointment of counsel. That was very clear. He wanted appointed counsel, but many pro se litigants would like counsel to be appointed, whether or not they have a mental illness. Even in their briefing, we don't know that Mr. Romano actually considers himself to be incompetent or would like a guardian to be appointed. And so this all underscores that this kind of inquiry is invasive not just for the district courts and for the opposing party, but also for the person who has to be subjected to that competency inquiry. With respect to the Rule 41 dismissal, I have seen no case in which a court has required a finding of willfulness, bad faith, or fault for a dismissal without prejudice. In fact, there's a Sixth Circuit case they cite called Tarvin, an unpublished order, where the court considered willfulness as one factor among others, but it was not dispositive. And the court actually said that they are not considering a dismissal with prejudice to be tantamount to a dismissal without prejudice, even if the statute of limitations has run. So the Sixth Circuit seems to take a very strict rule that even if the statute of limitations has run, a dismissal with prejudice is a less severe sanction. Here, the dismissal without prejudice does not have the effect of completely barring Mr. Romano's claims because he has access to a number of things that could get around the statute of limitations. There's the continuing violation doctrine, and Mr. Romano's position is that he received no medical treatment for the conditions at issue here at the Attica Correctional Facility from 2018 to 2023. And so if he can demonstrate that there was a policy of providing no medical care during that entire period, then that would allow him to revive any allegations relating to the time bar period under the continuing violation rule. There are also tolling provisions under New York law. So under Section 1983, the court looks to New York's statute of limitations and also to New York's tolling rules. And there is a tolling rule for insanity, which is basically the more modern word would be lack of capacity under CPLR 208. So you're on pretty speculative at this point, right? They are speculative in the sense, yes, they are speculative, but I think that stepping back, the question is was this sanction as severe as a dismissal with prejudice? And the fact that he has these options and it wasn't, this sanction was not. Maybe the best way to say it is the fact that he may have options. Correct. He may have options. And the district court dismissed without prejudice and clearly intended for Mr. Romano to be able to reassert his claims if he was so motivated. In fact, the court, you know, the report and recommendation says, you know, if Mr. Romano decides to reinstate, I am considering that he now has three strikes because there had been a recent decision saying he has three strikes. And I'll just say a word about that portion of it. Mr. Romano should not be entitled to invoke his three strikes to his own advantage here. Congress has made a determination that if an incarcerated person has three strikes, they're no longer entitled to inform a corporate status that would pose a practical bar for him. But he shouldn't be entitled to use that to his own advantage here, since it's effectively a punishment that Congress has imposed for litigants who abuse the court process. Thank you, Your Honors. We'll hear rebuttal. Your Honors, defendants argue that there is no duty to conduct an inquiry in this case. And so the district court could not possibly have abused its discretion in its Rule 17C determination. But the district court did make a Rule 17C determination. Whether or not it was obligated to, it made that determination, and that determination is reviewable for an abuse of discretion. Here, the district court abused its discretion by concluding that there was no need for Rule 17C protections when the court itself recognized that it did not have a basis to make a sufficient determination because the record was insufficiently developed, because it did not know, it said it did not know what role Mr. Romano's mental health played in his decision-making and in litigating his case. And second, as to the incompetence standard, it should be the capacity to manage one's own affairs. Those affairs include the capacity to competently manage one's own litigation. And that is consistent with the language and purpose of Rule 17 and with the New York civil standard. Thank you. Your Honors, regarding the continuing violation and ways to get around the statute of limitations issue, the Second Circuit in Winder takes a different approach than the Sixth Circuit. A statute of limitations continuing violation argument is conceivable, but it would be an uphill argument, and Winder doesn't suggest or require an absolute bar in order for the claim to be tantamount to a dismissal with prejudice. Thank you. We'll take the matter under advisement. Well argued, and thanks to Seton Hall for the help on this matter.